The fourth case for argument is Eniola Famuyide v. Chipotle Mexican Grill, Inc. et al. All right. Good morning, Mr. Trico. We'll hear from you first. Chief Judge Colleton, and may it please the Court, Counsel, Matt Trico for Chipotle Mexican Grill, Inc., Chipotle Services, LLC, Appellants. Appellants raise several issues on appeal, but at its core, this appeal is about statutory interpretation. That will be my focus today. The parties are before the Court on an appeal from a denial of a motion to compel arbitration. Appellants respectfully request that the Court reverse the district court and remand with instructions to compel arbitration because appellee assented to an arbitration agreement, which she does not deny, and the ending forced arbitration of sexual On March 3, 2022, Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, which can render unenforceable certain arbitration agreements that would otherwise compel arbitration of cases containing allegations of sexual harassment or sexual assault. There is no denying that the details of the factual allegations in this case are unsettling. However, that does not inform the disposition of this appeal. Rather, the question for this Court, the question the district court erred in answering, is when does a dispute arise under the Act? The answer to that question is essential because the Act's terms limit its application to disputes or claims arising or accruing on or after its March 3, 2022, enactment. The facts of the case are straightforward. Appellee acknowledged and affirmed an agreement to arbitrate on May 5, 2021. She could not have completed her onboarding and started her employment with appellants without doing so. Appellee does not deny acknowledging and affirming the agreement. Appellee alleges that she was sexually harassed by a coworker until November 23, 2021, when he assaulted her. That same day, she complained to her managers, whom she alleges threatened her with termination. On February 2 and February 21, 2022, Appellee's counsel transmitted demand letters to appellants containing factual allegations about the harassment and assault and outlining claims under Title VII and the Minnesota Human Rights Act. The February 21 demand letter invited appellants to discuss a resolution. And so I ask, if no dispute had arisen by that time, what was Appellee asking appellants to resolve? On March 1, 2022, appellants responded to the second demand letter, accepting the invitation to discuss a resolution. And so I ask again, if no dispute had arisen by this time, what were appellants agreeing to discuss a resolution of? Clearly, a dispute had arisen by each of these dates, which all predate the effective date of the Act. But what does it mean precisely for a dispute to rise under the Act? The Act doesn't define the term dispute, so one must look to its plain and ordinary meaning and ensure that the meaning ascribed to it under the Act does not result in conflation with its other terms. As the Honorable Learned Hand said, words are chameleons. They reflect the color of their environment. And so one must look to the Act as a whole to understand how the term dispute fits into the overall scheme. Ignoring these things, the district court erroneously held that a dispute arises under the Act when a lawsuit is filed, in this case, when Appellee filed her first lawsuit in State court approximately five months after the Act went into effect. Appellants contend that a dispute arises even earlier in the timeline of events, when the sexual harassment or sexual assault first occurs. To that end, appellants ask the Court to adopt the reasoning of the Western District of Pennsylvania in the Barnes v. Festler Fund Parks LLC case, which reached the same conclusion. As a threshold matter, we know that a dispute does not arise under the Act when a lawsuit is filed. When the fellow employee assaulted her in the restroom, a dispute arose between her and Chipotle? Your Honor, I'm saying that a dispute arose. And so the Act says that it applies to any dispute. So you're saying a dispute arose between whom and who? At that moment in time, it could have been a dispute between the Appellee and the What's your position? It was a dispute between the Appellee and the assailant. And we believe Appellee and the assailant. Can you use names? Yes. Ms. Humwide and the assailant, whose name is Mr. Bailey. Okay. So the two of them had a dispute at the time of the incident in the restroom, and that triggers the statute? That triggers a dispute arising under the statute. And we believe that's consistent with the definition of dispute. And so the common and ordinary meaning of dispute, as defined by the 11th edition of Black's Law Dictionary, defines a dispute as a conflict or controversy, especially one that has given rise to a particular lawsuit. And notably, that was the most recent edition of the dictionary at the time the Act was enacted. Why are you making that argument, that broad argument, when there's letters in February that between Chipotle and — well, I guess Chipotle didn't initially respond, but letters between Chipotle and the — was it Famuyide? Famuyide. Famuyide. Okay. No, and I would agree. I believe the letters set forth the outer bounds of when a dispute arises. It's a ceiling. The dispute couldn't have arisen at any point beyond the letters themselves. Yeah. The problem I'm having with the broader argument you just made is the claim accrued back when the assault happened. But this is not a legal doublet we're dealing with. And so presumably dispute has a different meaning. And I'm just not sure it has the broad meaning that carries it back to the same time when the claim arose or accrued. Well, and I think when it comes to the sexual assault, yes, it's a little different. The dispute arises and the claim accrued at the same time. But certainly the dispute arising, the dispute being the Act as the anchor of events, that makes a little more sense when you're talking about sexual harassment, which may be a discreet act, but in some cases, as alleged in this case, it's alleged there's continuing harassment. And so the claim may accrue at a later point in time, the dispute being the anchor, again, the first instance. What do you think dispute means? A conflict or controversy, especially one giving rise to a lawsuit. And that definition demonstrates. So suppose the person has a cause of action but never brings a lawsuit. Has a dispute arisen? Yes, Your Honor. Based upon the definition that the Black's Law declaration. Are you really just saying the cause of action is the same as the dispute? No. The cause of action is a. All right. Well, then I don't understand your argument. You said if the person has a cause of action but never does anything about it, there has been a dispute. Yes. All right. So then I don't understand what's the difference between the dispute and the arising of the cause of action. Well, a dispute arises and a claim accrues. And I understand a claim to be synonymous with a cause of action. So a claim characterizes some. You're saying when the claim accrues, the dispute arises. They happen at the same time. That can happen in the case of a sexual assault where there's a dispute, a conflict or controversy between the victim, the alleged victim and the assailant. Okay. Well, just to follow up, I'm not sure that's right. I'm having some trouble with it as well. But are you also making the argument, I just want to be clear, are you also making the argument that once the letters started going back and forth prior to March 3rd that the dispute arose at the latest by then? 100 percent. Okay. I just want to be clear about what the arguments are. It sounds to me like you're making multiple arguments. Yes. All right. So what's a dispute then? I'm sorry, Your Honor? Say again what you think a dispute is. As defined by Black's Law Dictionary, it's a conflict or controversy, especially one giving rise to a lawsuit. And so the dispute arises. It arises out of the circumstances. It's a conflict or controversy between some parties. But the claim or a cause of action characterizes the specific right that you are pursuing in relation to that dispute. But moving on from that, I would, again, just reiterate that we know that dispute cannot be when the lawsuit is filed. What if the party sends a letter like the one that was sent in February and then decides to do nothing further? The question, the answer comes back and the party is satisfied. Has there been a dispute? Yes. Yes, there has been. But, of course, the act of the country. But the reason you say there has been is because you said there was a dispute all the way back to when the cause of action accrued. Well, again, there could be a dispute, but sometimes the cause of action has not accrued in the case of sexual harassment where there may be multiple continuing acts. But, again, I would reiterate, we know that a dispute cannot be when the lawsuit arises because under the Act it will destroy the distinction between post-dispute and pre-dispute arbitration agreements. By its terms, the Act only applies to pre-dispute arbitration agreements. Well, what was the, in this case, let's talk about this particular case, what was the dispute or claim that existed before March the 3rd, 2022? Well, certainly a claim for sexual assault accrued on the day that the sexual assault occurred. A claim for sexual, a hostile work environment claim may have accrued on the last, the last date that harassment occurred. But the dispute, for example, as to the sexual harassment or hostile work environment, you know, that dispute began back at the first instance of. Go ahead. That dispute arose at the first instance of sexual harassment that comprised that chain of events constituting a hostile work environment. Okay. So are the things that you just described, are they described, are they set forth in any of the correspondence or letters that preceded March the 3rd? Oh, of course. Of course. Yeah. They are? Yeah. The letters, the letters set forth pretty much the allegations that are found in the lawsuit. I thought the, I thought the letter said, the March 22nd letter said, that the appellee here was investigating possible claims. And then, and Chipotle responded that it had strong defenses. But I don't see any, anybody describing exactly what they were talking about. No. In the demand letters, appellee does describe the specific facts, you know, underlying the claims, the facts that would constitute the dispute. The assault, the harassment, those are described in the letters. But, again, I think I would like to emphasize that if you find that a dispute arises when a lawsuit is filed, counsel, I just want to, I want to clarify because I want to, I didn't, wasn't there a March 1st letter also where, on March 1st, maybe I'm wrong about this, but I thought that Chipotle responded and that's when they said we think we have good defenses. They may have also done it on March 22nd, but I just want to get the, this is a factual question, what's the timeline? No, that's correct. There was a February 2nd demand letter, initial demand letter sent by appellee. There was a February 21st demand letter sent by appellee. Why do you call them a demand letter? Well, the letters. The demand doesn't appear in the letters. There's no specific monetary demand, but there's a demand that evidence could be preserved. You're calling it a demand letter because that makes it sound like a dispute, but there wasn't a demand for any money. There was no specific monetary demand. There was a, there was an instruction to preserve evidence in anticipation of future litigation, and there was a request to discuss a resolution of, of the situation. And then what did the March 1st letter? You talked about the other letters from the plaintiff. What did the March 1st letter? The March 1st letter included the statement that you just described, substantive responses to the statements made in the February 21st letter and then a conclusive restatement saying that Chipotle has strong defenses. So it was, it was, Chipotle said on March 1st that it's investigating the claims and that it thinks it has strong defenses. Yes, Your Honor. Okay. All right. Is that letter in the record? I'm sorry? Is that letter in the record? We have asked the Court to include that letter using its equitable powers in the record on appeal. And that — It's not in the record of the district court, though. It is not, Your Honor. No. Running out of time here, so I'm just, in closing, before reserving the rest of my time for rebuttal, I would say if a dispute arises upon the filing of a lawsuit, it would result in practically all arbitration agreements under the Act being pre-dispute arbitration agreements. Arbitration. What if it arose when there was a declaration that a lawsuit will be filed or a demand that if you don't pay a certain amount, there will be a lawsuit filed? Certainly. I mean, and I think that would be consistent. That would be a good rule? I don't want to say that a threat, that a lawsuit will be filed, but certainly an invitation to resolve a situation in which rights are being asserted under particular statutes or regulatory frameworks. Yes, Your Honor, I do think that would be a good rule. I'd like to reserve the rest of my time for rebuttal. All right. Very well. Thank you for your argument. Mr. Nelson, we'll hear from you. Thank you. Thank you, Chief Judge Colleton. Nicholas Nelson of Crosscastle PLLC for the Plaintiff Appellee, Eniola Famolide. May it please the Court and Counsel, the principal question on this appeal is whether the District Court correctly identified the legal standard for when a dispute arises for purposes of the effective date provision of the Ending Forced Arbitration Act. The District Court did get it right. Chipotle argued, and you heard them argue just now, that a dispute arises under the EFA at the instant a plaintiff is injured or at the instant the defendant engages in the alleged misconduct. The District Court held no, a dispute arises when the parties concretely express conflicting opinions about whether the defendant is liable. And as Chief Judge Colleton's questions reflected, that is the normal English meaning of the word dispute. It's people expressing disagreement about something. It's also the normal legal meaning of the word dispute. It's people expressing disagreement about someone's liability or someone's rights. Why did that happen? I agree with you on the point on the assault, the time of the assault. I think that you probably have a stronger argument. But why didn't that happen in this series of letters? Why didn't it happen as early as when you sent the letter saying, please preserve evidence, we're investigating things? That sounds to me like that's a setup for a lawsuit. Yeah. So I think this is where the canon of construction is useful, that words and statutes are given their ordinary legal meaning. So the idea that, yeah, lawyers are writing letters back and forth, maybe in common parlance might make people think there is a dispute. But almost every lawyer has had the experience, as Chief Judge Colleton's question reflected, of writing letters. And one side says, we're concerned about this. Can you explain what's happening? And counsel write back, we don't think you have anything to worry about. Here's what's happening. Can we accommodate your concerns this way? But that was — this was more than that. I mean, the earlier letter was not just, hey, we got concerns about this. It was start preserving the evidence. That — I mean, maybe you do that outside of a potential thinking about a lawsuit, but I can't think of a reason why you would do that unless you're at least considering having a suit. I agree. I think that thinking about a lawsuit is not yet, you know, bringing a dispute, right? I think that — obviously, you're thinking about a lawsuit if you've hired a lawyer. But, you know, I mean, I've certainly had this experience in practice on occasion where counsel do write letters back and forth, and, you know, eventually people decide there is nothing to fight about here. And it's standard practice for that first letter to say, we're concerned you might be violating the law. Please preserve evidence.  I mean, I don't think there's any mean jokes that people might make about lawyers. It's just not true that every time lawyers are involved, there's going to be a dispute. Sometimes there is. But you see — you see letters that — that ask for the preservation of evidence and make the other claims that are made in the original letter, even when there's no dispute. Well, I think the definition of dispute is when — when have people really — you know, like, for instance, when someone makes a demand, right? When someone says, you are liable for this, that's one side. When the other side says, no, I'm not acceding to your demand, no, I'm not liable for it, that's the other side. Then you have a dispute. That's the definition. That's not the question I asked. I asked whether or not you often see, you know, demands to preserve evidence and other such things when you're just having a friendly conversation or investigating the claim or something like that. Investigating a claim, yes. I mean, that's — you know, a great example, I think, is in the noncompetition or trade secrets space, right? This is — there could be many others in other areas of the law, but this is something that I know about where an employee will leave and this employee knows how to make the product, right? And that's a trade secret. And the employer says, I'm not sure what this employee is going to do. Maybe they're going to give away my trade secret. Maybe they're not. But I can't wait, right, because if they're going to give it away, they're going to give it away. So a letter like this goes out immediately. The employer says, hey, you've got to preserve documents. It might go to the new employer, too, right? You know, you've got to take all precautions. Oftentimes there's a letter back, and sometimes a dispute develops, sometimes it doesn't. This happens in many different commercial contexts where parties are concerned about what's going on. I don't know. They send a letter making requests like Ms. Famiglietti's letter. So then we have the March 1st letter, and I just want to ask you about that. I know it's not formally part of the record, although they have a due process argument saying it should be. What do we do? Do you deny that that March 1st letter was sent out or deny the content of the March 1st letter, I guess, would be the question. What should we do with that? Well, I think, I mean, they're asking the Court to hold that the district court erred based on evidence that they didn't show the district court. So I don't think we should be talking about the March 1st letter. If we do talk about it, I don't think it is particularly harmful to us. I think I would, you know, I'm sure the Court has looked at the March 1st letter, but I would urge Your Honors to do so again. I mean, it's a couple of pages long, and almost all of it is very conciliatory. It leads with paragraphs saying we didn't mean to fire you. You're welcome to come back to work. Then there's, you know, many bullet points of we want to tell you all the details of the information that you asked for, and it's one sentence at the end. It's one clause of one sentence at the end that says we think we have defenses to your claims. So I don't think that that letter evidences a dispute. If the Court thinks that the district court should have considered it, just to be clear, I think the proper remedy would be to remand for additional proceedings. It certainly shouldn't be that Chipotle is the only one who gets to see the district court's ruling and then offer new evidence, and we don't get a chance to do that on our side. Well, if we were going to consider this letter, this March 1st letter, when was it received? Well, I think it was e-mailed to counsel on March 1st. It was then forwarded to Ms. Famiglietti herself on March 9th. So the tangible letter on March the 9th? I think the letter was only in electronic format. So what's the March? What is March the 9th? Well, that's a secondary argument we make in our brief. It has to do with the structure of the effective date provision of the statute where it says a claim or dispute that arises or accrues. So Congress did not say a claim that accrues or a dispute that arises. It applied both verbs to both nouns. And the question is, well, what does it mean for a dispute to accrue? We're suggesting that the dispute may not have accrued. Even if the March 1st letter showed a dispute, which we think it clearly does not, we think it would not have accrued until March 9th. Well, that's my question. What's March the 9th? What happened on March 9th? That's when Ms. Famiglietti herself read the letter or got it in her e-mail inbox. From who? From her counsel. Okay. So counsel received it March 1st, but didn't give it to the client until March 9th is the time. Or didn't show it to her, didn't print it out, whatever. I think so. I would emphasize, I mean, none of this is in the record. Fair. This is all asserted in the brief. So this would be something that the district court might need to look at on remand if Your Honors thought that was necessary. Suppose you had a situation with these kinds of letters where the company and the employees both say they're willing to talk about a resolution of the situation or whatnot, and then there is a resolution. Let's say the company provides some money or some other something else, a benefit to the person. Would you say in that situation that there ever was a dispute? I think it depends on what the assertions were that got made on both sides. I certainly think, I mean, the statute reflects. Let's take this case, then. Let's say that, you know, later in March the parties agreed that the company would pay a certain amount and the employee would release any and all claims. Right. Then they would have resolved. Would there have been a dispute? No. They would have resolved the claim without there being a dispute. And that reflects the statutory structure, right? Congress talks about claim or dispute. And Ms. Zamita's letter, this is. So you're saying there wouldn't be no dispute if it were resolved in that hypothetical way? Sure, sure. And I think lots of. . . Why would there not be a dispute? Because the parties had not, you know, said, not disagreed about it, right? They had no formal adversarial posture, you mean? Right. They had agreed. I mean, I think a really common way that this comes up in everyday life is in car crashes, right? I mean, you know, somebody has a claim, but oftentimes the other driver knows, ah, this is my fault, you know, and they don't dispute it. And it's even called a claim, right? An insurance claim gets filed and it gets resolved and there's never a dispute. So that's what would have happened here. One oddity of this case I want to ask you about because we focused a lot on the March 1st letter. You're right, it's not in the record. But what is in the record is the complaint references the March 1st letter from Chipotle. And there's an affidavit from plaintiff's counsel. I don't know if it was you. It might have been a different counsel. Other counsel. Yeah. Other counsel saying, oh, yeah, I received a letter from Chipotle about this. It kind of was before the district court. Maybe not the letter itself, but certainly it's alluded to. Plaintiff brought it into the case themselves. And so what do we do with that? So I think the relevant point here is not that Chipotle sent a letter. It's what the letter said, right? Because we're looking for a dispute. If Chipotle had sent a letter saying we're sorry about what happened to you, we're going to try to make it right, that certainly would not have evidence to dispute. So, you know, yes, the district court says in a footnote there's no evidence Chipotle responded. One could argue that that's incorrect. I don't think it's incorrect in a material or prejudicial way because there's no evidence about what Chipotle said in response. And that's what matters if you're looking for a dispute. I would address, I guess, briefly counsel's argument, it was in the briefs as well, about how a dispute supposedly has to come before a claim. I don't think that's the way we talk about things in normal life. You know, I gave the car insurance example. We talk in our brief about how many claims accrue before they're disputed. And a lot of claims are never disputed, right, as Judge Culleton's question reflected.  The defendant may decide never to assert it. The defendant may decide never to dispute it. I would also note that the canon against surplusage suggests that that's not a permissible reading of the statute. If a dispute always had to come before a claim, then Congress wouldn't have to have to have, sorry, Congress would not have needed to talk about a claim or dispute arising on or after March 3rd. If the claim always came second, the only relevant time would have been when the claim arose. When is the claim ever relevant under this statute? Well, so the dispute always occurs after the claim. I would say it can happen in either order, right? I mean, people can dispute, do you have the right to do this before the defendant does it? Or they can dispute it before, you know, the defendant can do something and it can start an inaction, a series of events that leads to harm to the plaintiff, and the dispute can arise in the meantime. And then, of course, there can also be. But give me an example where you think there would be a dispute before a claim. I think a continuing line of sexual harassment would be a great example, right? So a plaintiff says, hey, this person's, you know, treating me badly in the workplace, and it keeps happening for months and months and months. There are claims that are accruing there, and it's been disputed all along. So the dispute existed beforehand. How did the dispute exist in that hypothetical? Well, the dispute, so the plaintiff would be saying you shouldn't be letting the defendant do this. I'm sorry. You shouldn't be letting this person do this. You should be putting different, you know, I want this to stop. The plaintiff says that on Week 1, right? And then on Week 2, it happens. And on Week 3, it happens. And on Week 4, it happens. So there are claims accruing in Weeks 2 and 3 and 4. The dispute arose in Week 1. What about this? I mean, I'm just hypothesizing. What about discovery of an injury where you have a tort of some sorts, but then later on you discovered you're injured? Oh, I have a claim. Even though you may have said, hey, you shouldn't leave water on the floor, you know, because it could slip and slide. I don't know. I'm just hypothesizing here. But it would be a strange case for it to be, but I guess they exist. Yeah. We talk about this in the briefs. And, I mean, I don't know that, you know, people invoke the discovery rule relatively often in litigation, so it might not be the majority of the time, but it wouldn't be a freak occurrence either, right? It would happen with some frequency. I guess my last point, unless the Court has further questions, refers to counsel's argument about, you know, well, this has to be a pre-dispute arbitration agreement and that our interpretation of the word dispute would mean nothing is ever pre-dispute. I don't think that's correct. I think there's lots of times when parties might enter an arbitration agreement after a dispute has been joined. If parties are actually discussing a resolution of their claims and they say, you know, we want to arbitrate this, it's easy for them to make that enforceable. They just put in their contract the plaintiff asserts liability, the defendant denies it, and then, you know, the EFA doesn't apply. That's a post-dispute arbitration agreement. I think the other scenario where the parties have not been discussing it illustrates why Congress would have written the statute the way it did. You know, you can have an injury that occurs and then perhaps just by happenstance the parties, you know, they have not discussed the injury, but they enter into an arbitration agreement about something entirely different, a consumer purchase or something. You know, if they really haven't talked about the sexual assault or the sexual harassment and the dispute arises later where they then start talking about it and there's a dispute, I would think that some, you know, consumer contract arbitration clause that happens in the interim could quite sensibly be called a pre-dispute arbitration agreement. I don't think that's going to happen particularly often, but if it does, I think that's what Congress would have done. Let me ask you, there's one other peculiarity of this record, which is the firing, the threatened to fire. Is that a dispute? I wonder if, you know, because it was clearly based on the assault in the bathroom or at least the aftermath of it. There's no — nobody has suggested a different reason for it. And I just wonder when Chipotle comes in and says, you know, we're potentially threatening to fire you, that that creates a dispute. Yeah. I think there's an argument, and some of the cases rely on this rationale, too, that if you're bringing a retaliation claim or a reprisal claim, there must have been a dispute. I don't think that's the way retaliation claims or reprisal claims normally work, right? Normally in a case like that, a defendant is saying, oh, no, we did not fire you because of your complaint or because we disputed your advocacy. The defendant gives some other innocent reason and says, that's why we fired you. And then the litigation is about whether that was a pretext. Well, you know, whether it's a pretext or not, giving an innocent reason is not engaging in a dispute, right? And that's what Chipotle did here. So when, you know, they — when they did say they fired Ms. Famiglietti, this was as of March 3rd, they said it was a mistake, you can come back. And then as to, you know, not responding, threatening to fire her, not responding to a report of sexual assault the way you might expect, they said, oh, we didn't understand you were reporting sexual assault. They weren't disputing the report. They were saying, you know, we didn't — we didn't understand it. Thank you, Your Honors. Very well. Thank you for your argument. We have a brief moment for rebuttal, Mr. Treko. Thank you, Your Honor. I would just reiterate that it is our position that a claim accrued on the date of the on either February 2nd, 2022, or February 21st, 2022, with the demand letters, when there was a request to preserve evidence or a demand to preserve evidence and an invitation to discuss resolution of a dispute, we would respectfully request that the Court admit the March 1st letter into the record in the interest of justice. And — Why not admit it below? I just — I have to ask the question. Did you not have a chance to? What exactly happened? There was no — there was no discussion about whether there was a response. And it simply didn't appear relevant at the time. I think also in practice, you exercise some restraint in putting into the public record correspondence from parties pre-litigation. But just to address briefly — Pre-dispute? I'm sorry? Never mind. Just to answer your hypothetical.   But I appreciate your argument. Thank you, Your Honor. Thank you very much. I guess that's the question, whether it was or was not pre-dispute. So we'll have to wrestle with that. But thank you to both counsel for your arguments. The case is submitted and the Court will file a decision in due course.